IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| R.S., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 15-339 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| BUTLER COUNTY, PENNSYLVANIA, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

## I. MEMORANDUM

Defendants' Motions to Dismiss (Docs. 28 & 30) will be granted.

Plaintiffs are the parents of a minor child ("the child"), and they have brought this action against Butler County, one of its juvenile probation officers ("the PO"), her supervisor, a juvenile court master ("the court master") and one of the County's assistant district attorneys ("the assistant DA"). *See generally* Am. Compl. (Doc. 22). Also named as a Defendant is Judge Thomas J. Doerr, of the Court of Common Pleas of Butler County, but Plaintiffs have acknowledged that Judge Doerr is entitled to absolute judicial immunity (*see* Doc. 38), and, therefore, his Motion to Dismiss (Doc. 28) will be granted.

Plaintiffs' claims emanate from Defendants' handling of juvenile delinquency proceedings initiated against the child for episodes of misconduct at school. *See generally* Am. Compl. at ¶ 28. In December 2012, Plaintiffs entered into a consent decree with the County, under which the child was placed on probation, with conditions of supervision, in exchange for the County's agreement to suspend delinquency charges pending against him. *See id.* at ¶ 29.

On March 12, 2013, a "behavioral specialist consultant" at the child's school notified the PO that "three [new] disability-related behavioral incidents [had] occurred at school." *Id.* at ¶ 32. The PO visited the child at school the following day, on March 13th, and, as the PO approached him, the child "flail[ed] his arms and legs," thereby striking the PO. *See id.* at ¶ 34.

The day after, on March 14th, the PO initiated a detention hearing before the court master. *See id.* at ¶ 41. A public defender was appointed to represent the child. *Id.* Plaintiffs, through their appointed counsel, objected to then proceeding, on the grounds that Plaintiffs had been advised that the meeting with the PO that day was meant to be informal, not a detention hearing, and, had they known, Plaintiffs' self-retained counsel would have been present. The court master denied Plaintiffs' request for a continuance and, after hearing testimony from the PO and the child's mother, he recommended that the child be detained pending a "Consent Decree Revocation and Detention Hearing" scheduled for March 19th. Judge Doerr adopted the master's recommendation, and the child was committed to a juvenile detention facility.

Plaintiffs' retained counsel, the lawyer representing them in this lawsuit, filed a motion for emergency review, and Judge Doerr convened a telephone conference on March 15th. *See id.* at ¶¶ 48-49. After hearing from Plaintiffs' counsel and the assistant DA, Judge Doerr reaffirmed his detention order pending the hearing scheduled for March 19th. On March 18th, Plaintiffs' counsel met with the PO, her supervisor and members of the child's educational and mental heath treatment team, and they worked out a deal. Plaintiffs agreed that the child would "transition to a more restrictive setting in an Approved Private School," in exchange for the child's immediate release from detention. *See id.* at ¶ 51. Judge Doerr signed off on the parties' agreement, and the child was released on March 19th. *See id.*

2

On these allegations,[1] Plaintiffs assert claims against the County, the PO, her supervisor, the court master and the assistant DA, alleging that they discriminated against the child based on his disabilities, in violation of the ADA and the Rehabilitation Act; that Defendants denied the child procedural due process; and that Defendants are liable under Section 1983 for a failure-to-train. *See* Am. Compl. at Counts I-IV.

Having filed these claims, scattershot, against all the Defendants, in both their individual and official capacities, Plaintiffs' counsel quickly acknowledges in response to Defendants' Motions that a number of the stated theories are barred under controlling law. As to the ADA and Rehabilitation Act, Plaintiffs abandon their claims against Defendants in their individual capacities. *See* Pls.' Opp'n Br. (Doc. 39) at 7-8. Plaintiffs likewise acknowledge that the PO, her supervisor and the court master are entitled to Eleventh Amendment immunity on claims for money damages and retrospective relief, although their counsel posits that they still may enjoy prospective declaratory and injunctive relief under *Ex Parte Young*. *See id.* at 8-10. As Defendants point out, however, Plaintiffs may proceed on this theory only if they allege an ongoing violation of federal law, and, Plaintiffs' protestations to the contrary notwithstanding, the Court sees nothing of that nature here.

---

[1] In light of the standards applicable under Rule 12(b)(6), Defendants have exercised admirable restraint in declining to retort with their own version of events. *See* Defs.' Br. (Doc. 31) at 2 n.3 (noting Amended Complaint's omission of facts leading to criminal charges that resulted in original consent decree, and offering, "suffice to say that the [child's] acts were not benign") *and id.* at 5 n.6 (noting conspicuous absence of facts leading to entry of a *second* consent decree, in November 2013). That Plaintiffs have enjoyed their opportunity to control the narrative appears evident from their recounting of the incident on March 13th. *Compare* Am. Compl. at ¶ 34 ("[the PO] continued trying to engage [the child] and was struck in the thigh by [his] flailing leg") *with* Defs.' Br. at 3 ("in common parlance, [the child] kicked her"). While Plaintiffs and their counsel cannot be faulted for exercising their pleading-prerogatives, it appears, to this neutral observer, that the averments at times stray into the realm of paternal denial. *See, e.g.*, Am. Compl. at ¶ 43 (criticizing PO for testifying that the child "had broken a teacher's collarbone," when, "the teacher's collarbone was in fact [only] bruised").

3

Plaintiffs next concede that a bulk of their claims are barred under the *Rooker-Feldman* doctrine, which prohibits this Court from reviewing and overruling final state-court judgments. *See id.* at 15-17. Again, their counsel suggests that valid claims may remain because some of their challenges are independent, and can be separated from, Judge Doerr's rulings. *See id.* at 16. Specifically, counsel suggests that Plaintiffs' grievances regarding inadequate notice of the pre-detention hearing may proceed, along with the failure-to-train theory. *See id.*

The problem for Plaintiffs is that, even after carving up their claims to eliminate retrospective and money damages under *Ex Parte Young*, and removing claims intertwined with Judge Doerr's orders per *Rooker-Feldman*, there remain no viable, substantive legal grounds for relief. For the purposes of disability discrimination under the ADA and Rehabilitation Act, Plaintiffs cannot identify a program, activity or benefit of which the child has been denied. All Plaintiffs' counsel can come up with is the argument that the child was deprived the benefit of his consent decree and/or the workings and procedures of the juvenile delinquency system. *See id.* at 20-21. Having extensively reviewed the law, however, the Court has failed to uncover any precedent supporting the theory that the disability-discrimination laws protect an individual, child or adult, from having to defend criminal/delinquency charges and/or proceedings. While the Court understands Plaintiffs' contention that Defendants mistook manifestations of the child's disabilities for delinquent conduct, or that his disabilities should have been recognized as having influenced the same, counsel has failed to identify *any* legal authority showing that their grievances are actionable under the ADA or Rehabilitation Act.[2]

---

[2] Plaintiffs' discussion of reasonable accommodation serves to emphasize the fallacy of their approach. *See* Am. Compl. at ¶ 5 ("[the] County failed to consider a reasonable accommodation that would have enabled [the child] to remain at home with his family, <u>instead of committing him to a juvenile detention facility</u>") (emphasis added). Plaintiffs' accommodation theory constitutes a thinly-veiled attack on Judge Doerr's detention rulings, an approach falling squarely

As for due process, the Court is not exactly sure of what Plaintiffs complain. Although counsel alleges that they were misinformed regarding the nature of the Plaintiff-mother's meeting with the PO on March 14th, the child was appointed a public defender, who promptly raised the same objection. The court master denied Plaintiffs' request for a continuance, and accepted testimony from the Plaintiff-mother before recommending detention, said recommendation being adopted by Judge Doerr. One day later, Judge Doerr convened a telephone conference, listened to retained-counsel's objections and nevertheless reaffirmed the order of temporary detention. Although the denial of a continuance may seem unfortunate, this Court cannot see how the matter can be redressed here without doing violence under *Rooker-Feldman*. That doctrine precludes review, and Plaintiffs' arguments to the contrary are unconvincing.[3]

Even assuming Plaintiffs could circumvent *Rooker-Feldman*, they have failed to identify the kind of prospective-only, declaratory or injunctive relief potentially available under *Ex Parte Young*. Plaintiffs have not, for example, identified systemic defects in Pennsylvania's juvenile court processes or procedures independent of, and that can be unraveled from, the specific allegations in this case and/or from Judge Doerr's rulings.

---

within the prohibitions of *Rooker-Feldman*. *See* Pls.' Opp'n Br. at 16-17 (acknowledging doctrine but arguing, unconvincingly, that *other* of Plaintiffs' legal challenges may be parsed from Judge Doerr's rulings).

[3] Indeed, the Superior Court of Pennsylvania recently recounted its standards for reviewing the denial of a continuance in juvenile proceedings. *See* In re S.D., 2015 WL 7193024, *3 (Pa. Super. May 14, 2015) ("We review a denial of a motion for continuance [in juvenile court] for an abuse of discretion.") (citation omitted). That the Superior Court routinely reviews such determinations serves to emphasize that Plaintiffs' claims here are misplaced.

Finally, having failed to identify a viable substantive claim, Plaintiffs' failure to train or supervise theory likewise fails. *See* Bridges v. Scranton Sch. Dist., 2016 WL 953003, *5 (3d Cir. Mar. 14, 2016) (citations omitted, holding same).

In the end, Plaintiffs are forced by controlling law to concede away nearly every theory of liability offered in their pleadings. Having done so, they are left to rely on slivers and slices of putative liability (*e.g.*, prospective-only equitable relief, that may be teased out from Judge Doerr's final rulings) in the desperate hope that something may continue to stick.[4] Once all the dust has settled, the Court is left with the inevitable conclusion that "there is no there, there," and all that remains is Plaintiffs' dissatisfaction with the handling of the child's delinquency proceedings.

The Court is not insensitive to the significant challenges facing the Plaintiffs, parents and child alike, in connection with his disabilities. And while the Court believes the child to be fortunate to have engaged parents (and legal counsel) championing his welfare, reality dictates that he will, by necessity, be required to interface with social and legal institutions owing responsibilities not only to the individual, but the collective. There is an inevitable tension between individual-interest and the smooth and equitable operation of social institutions on the whole. While it is part of the parental condition to believe that nothing is too good

---

[4] Plaintiffs have, as they must, made other concessions, including the assistant DA's entitlement to prosecutorial immunity, the special master's entitlement to quasi-judicial immunity and the PO agents' partial immunity. *See* Pls.' Opp'n Br. at 10 (immunity for court master), *id.* at 11-12 (some immunity for PO agents) *and id.* at 13 (immunity for assistant DA). While these concessions are accompanied by the now-familiar attempted carveouts, the Court relies on them as further support for the grant of dismissal. The one area the Court agrees with Plaintiffs is their assertion that some of the PO agents' alleged conduct is more akin to the "executive" functions described in the case law, as opposed to adjudicatory, and thus not necessarily subject to immunity. Of course, this is of little consequence given the lack of substantive grounds for redress. Finally, the standing issues addressed by the parties, *i.e.*, whether the Plaintiff-parents can state individual claims as opposed to on behalf of the child, likewise are moot.

(or quite good enough) when it comes to one's child, an amount of self-awareness, and perspective more generally, should attach.

Although the Court is not without sympathy regarding the child's temporary detention in March 2013, and does not mean to question or invalidate the psychic trauma he experienced, there is only so much redress available under the law. The Court would urge Plaintiffs, with the benefit of some objectivity and distance, to consider the possibility that Defendants acted not with malevolence or indifference, but, rather, did the best they could under difficult circumstances. Such an understanding demands not a concession that the circumstances were, at all times in every respect, devoid of human error. Rather, it would be to recognize that everyone -- parents, the child and county and school officials alike -- should do their best in making all reasonable efforts to facilitate the child's continued growth and the recognition of his full potential.

For all of the reasons stated above, the Court hereby enters the following:

## II. ORDER

Defendants' Motions to Dismiss (**Docs. 28 & 30**) are **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**.[5]

---

[5] As should be evident from the discussions above, the Court has no reason to believe that Plaintiffs' pleading deficiencies can be cured by further amendment. Finally, Plaintiffs' putative claims under Pennsylvania law fail for the same reasons as do their federal claims. *Compare* Am. Compl. at ¶¶ 22 (purporting to invoke Court's supplemental jurisdiction) *with* Hayes v. Reed, 1997 WL 125742, *5 (E.D. Pa. Mar. 13, 1997) ("[f]ederal and Pennsylvania procedural due process rights [are] substantially coextensive") (citation to quoted source omitted). Even were that not the case, the Court declines to exercise supplemental jurisdiction under the prevailing legal standards. *See* Bright v. Westmoreland Cnty., 380 F.3d 729, 751 (3d Cir. 2004) ("absent extraordinary circumstances, where the federal causes of action are dismissed[,] the district court should ordinarily refrain from exercising [supplemental] jurisdiction over . . . state law claims").

7

IT IS SO ORDERED.

June 21, 2016                                              s\Cathy Bissoon
                                                          Cathy Bissoon
                                                          United States District Judge

cc (via ECF email notification):

All Counsel of Record